# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NINO RAYNOR,<br>11664 JUTLAND ST.<br>PARKER, CO 80134<br>      Plaintiff<br><br>      v.<br><br>DOUG BURGUM, SECRETARY,<br>U.S. DEPARTMENT OF INTERIOR<br>1849 C STREET, NW<br>WASHINGTON, DC 20420<br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:25-cv-3752<br><br><br><br><br><br><br><br><br><br><br>Date Action Filed: October 22, 2025 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Nino Raynor ("Plaintiff"), by and through her undersigned counsel, and brings this action for damages against the Defendant, Doug Burgun, as Secretary of the U.S. Department of Interior ("DOI" or "Agency"), and alleges as follows:

## SUMMARY OF THE ACTION

1. This is a civil rights action brought by a disabled DOI employee, who has been subject to harassment (non-sexual), a hostile work environment, and discrimination leading to personnel disciplinary action and lower and or inaccurate performance appraisals, in part, due to Plaintiff's National Origin, Sex, Disability, and Reprisal for partaking in prior EEO activity. .

2. The Plaintiff is and has always had an accent and it has been widely known amongst the Agency that her national origin is not American, has always been female, and it has always been known amongst the Responsible Management Officials ("RMO") in this action that she previously filed numerous EEOC complaints against the same individuals retaliating against her.

3. The Plaintiff previously filed three (3) Equal Employment Opportunity Commission

1
COMPLAINT

("EEOC") hearing requests, all of which were assigned to an Administrative Judge, and litigated the matters accordingly, in part, through the administrative process afforded her, until an unfavorable decision was issued for each matter, with a Final Agency Decision/Order issued shortly thereafter for each matter accordingly.

4.    At issue in this suit is whether the DOI subjected Plaintiff to discrimination, including harassment, on the bases of National Origin, Sex, Retaliation for participating in protected activity, and disability when:

i.    On April 1, 2019, Plaintiff was falsely accused of not addressing the "Hormone Method" performance issue and quality issues related to the "Kansas Well" sample;

ii.    On February 5, 2019, Plaintiff's manager at the time presented plaintiff work that was previously considered invalid;

iii.    In early November 2018, Plaintiff was informed she was being monitored by a co-worker as ordered by her second line supervisor;

iv.    On October 31, 2018, Plaintiff was issued a rating of minimally successful for her 2018 Fiscal Year evaluation period;

v.    On January 7, 2020, RMO Mr. Jeff McCoy, displayed anger and criticized the Plaintiff's performance in front of the entire management team;

vi.    On January 22, 2020, RMO Mr. McCoy violated a no contact order between himself and Plaintiff;

vii.    On January 22, 2020, RMO improperly addressed the Plaintiff's lab schedule;

viii.    On April 2, 2020, RMO Mr. McCoy issued Plaintiff a warning letter for inexcusable and inaccurate reasons;

2
COMPLAINT

ix.    On May 22, 2020, RMO Mr. McCoy reprimanded Plaintiff for inexcusable and inaccurate reasons;

x.    On June 5, 2020, Plaintiff's supervisor denied Plaintiff the opportunity to have a third-party present for Plaintiff's 2020 Fiscal Year review;

xi.    On June 22, 2020 Plaintiff's supervisor issued her a letter of counseling;

xii.    Plaintiff was issued a suspension by her chain of command.

xiii.    On an unspecified date, Mr. Jeff McCoy and Greg Clark delayed Plaintiff's performance evaluation for 11 months and she received her 2020 Fiscal Year evaluation on August 31, 2021;

xiv.    On an unspecified date, Mr. Jeff McCoy and Mr. Greg Clark delayed Plaintiff's 2020 Fiscal Year Performance Standards for more than 11 months leading to Plaintiff receiving her Performance Standard in September of 2021 instead of September 2022;

xv.    On an unspecified date, Plaintiff was not given the opportunity to perform her duties for 12 months, instead being assigned 2 critical elements for 90 days;

xvi.    On July 6, 2021, Plaintiff was the only management official who was excluded by the RMO from management team meetings;

xvii.    On and about July 2021, the agency issued a 5 year no contact order between two employees, however the agency only issued a limited no contact order between Plaintiff and RMO, Mr. Jeff McCoy.

xviii.    On July 1, 2021, Mr. McCoy issued a Rapid Note notifying agency customers and delaying nutrient data due to staffing shortages in the Nutrient Section, while improperly addressing the staffing shortages in Plaintiff's department.

xix.    On July 1, 2021, RMO Mr. McCoy assigned Plaintiff unachievable goals in

3
COMPLAINT

2018 and 2020, directly resulting in low performance.

## JURY TRIAL DEMAND

5.      Under Fed. R. Civ. P. 38 (b), Plaintiff hereby demand trial by jury on all issues triable to a jury.

## JURISDICTION

6.      This action arises under Sections 501 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. This Court has proper subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1341 (federal question) and 1343 (civil rights).

## PARTIES AND VENUE

7.      Plaintiff, Nino Raynor, is a citizen of the United States and is a resident of Douglas County, Colorado. Plaintiff is an employee of the Agency.

8.      Plaintiff is informed and believes, and alleges that at all times relevant herein, Agency/Defendant was responsible in some manner for the occurrences, offenses, and injuries alleged in this complaint. Plaintiff will further amend this Complaint, if needed, to show or correct for true names and capacities, and facts, when the same have been ascertained.

9.      All of Plaintiff's claims arise under Federal Law.

10.      Plaintiff has exhausted the required administrative remedies per the Final Agency Decisions and filings with the EEOC pursuant to 29 C.F.R. §1614.407(b), Plaintiff is authorized to file this civil action in an appropriate U.S. District Court.

11.      Defendant, Doug Burgum, is sued in his official capacity as the current Head of the U.S. Department of Interior, an agency of the United States, and Plaintiff's employer.

12.      Venue is proper in the United States District Court for the District of Columbia, and

4
COMPLAINT

Defendant is subject to the personal jurisdiction of the United States District Court for the District of Columbia because Defendant maintains facilities and business operations in this District. 28 U.S.C. § 1391(b) and (e); 42 U.S.C. § 2000e-5(f).

13.    Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3), as Plaintiff is a HQ asset employed by the Agency in the District of Columbia, and Plaintiff's employment records are maintained by the Agency in this judicial district.

## FACTUAL ALLEGATIONS

14.    Plaintiff Nino Raynor is a career civil servant and naturalized U.S. citizen born in the Republic of Georgia. She has worked for the U.S. Geological Survey ("USGS") at the National Water Quality Laboratory ("NWQL") in Lakewood, Colorado, since September 2010.

15.    Ms. Raynor holds the position of Supervisory Chemist, GS-1320-13, responsible for the supervision of analytical chemists, the oversight of GC/MS and nutrient-analysis methods, and the maintenance of quality-assurance programs for federal environmental data.

16.    Throughout her first eight years at NWQL, Ms. Raynor maintained exceptional performance ratings and received positive feedback from peers and upper management.

17.    Her employment record remained unblemished until she began engaging in protected Equal Employment Opportunity ("EEO") activity in 2018 following a series of discriminatory and retaliatory acts by her second-line supervisor, Jeff McCoy (Chief, NWQL), and third-line supervisor, Greg Clark (Director, Laboratory and Analytical Services Division).

18.    In 2018 Ms. Raynor filed her first formal EEO complaint (DOI-USGS-19-0153) alleging that Mr. McCoy had begun to scrutinize, micromanage, and disparage her because of her national origin (Georgian) and sex (female).

19. Following that complaint, Mr. McCoy's conduct escalated: he removed her from team communications, excluded her from decision-making meetings, and began issuing directives designed to undermine her authority over subordinate chemists.

20. Coworkers confirmed that Mr. McCoy frequently commented on Ms. Raynor's accent and questioned her "communication style," implying that English was not her first language and suggesting she was "too direct" or "not culturally a fit."

21. When Ms. Raynor raised these issues with HR and management, she was told to "try to adapt to the team culture," and no remedial action was taken.

22. In retaliation for her EEO activity, Mr. McCoy began withholding performance feedback, delaying her evaluations, and distributing her supervisory responsibilities to less-qualified male employees.

23. On January 7, 2020, during a management meeting, Mr. McCoy erupted in anger at Ms. Raynor, loudly criticizing her performance before the entire leadership team, an act multiple witnesses described as demeaning and unprofessional.

24. On January 22, 2020, Mr. McCoy violated an existing no-contact order imposed by HR due to prior harassment, contacting Ms. Raynor directly and questioning her work assignments.

25. On April 2, 2020, he issued her a written warning alleging failure to follow instructions regarding a Continuous Improvement project. The charge was false; Ms. Raynor had complied fully and sought input from a peer reviewer as procedure required.

26. On May 22, 2020, Mr. McCoy escalated matters by issuing a Letter of Reprimand, again without factual basis or prior counseling.

27. On June 5 and June 22, 2020, Ms. Raynor's immediate supervisor, Duane Wydoski, denied her the right to a third-party observer at her performance review and then issued a Letter of

6
COMPLAINT

Counseling, continuing a paper trail of discipline that contradicted her earlier record of "Outstanding" performance.

28.    These actions occurred within months of Ms. Raynor's 2018 EEO case being actively investigated, establishing a close temporal link between her protected activity and the retaliatory conduct.

29.    By the end of 2020, Ms. Raynor's professional reputation had been damaged, her authority eroded, and her working conditions intolerable.

30.    In FY 2020–FY 2021, Mr. McCoy and Mr. Clark delayed Ms. Raynor's performance standards and annual evaluation by approximately eleven months, issuing them only in August–September 2021.

31.    Because her performance plan was not in effect for most of the year, she was deprived of measurable goals and could not qualify for "Outstanding" ratings, directly harming her eligibility for awards and promotions.

32.    On July 1, 2021, Mr. McCoy issued a public Rapi-Note to USGS customers blaming laboratory delays on "staffing shortages," while privately acknowledging that other sections with male managers had identical shortages that were never reported.

33.    On July 6, 2021, she was the only management official excluded from a leadership meeting, a deliberate act of isolation confirmed by witnesses.

34.    That same year, USGS granted another pair of employees a five-year no-contact order to prevent conflict but refused to give Ms. Raynor the same protection from Mr. McCoy, limiting hers to a temporary or "restricted" order.

35.    Mr. McCoy and Mr. Clark assigned Ms. Raynor unachievable performance goals and imposed an arbitrary 90-day deadline for "critical elements" that could not reasonably be completed, ensuring an artificially low rating.

36.     Throughout 2021, Ms. Raynor was stripped of core supervisory duties for nearly twelve months, denied opportunities to lead projects, and excluded from quality-control initiatives historically under her direction.

37.     Despite her repeated complaints to HR and the Office of Diversity, Inclusion and Civil Rights ("ODICR"), management failed to intervene or prevent further harassment.

38.     The cumulative actions of Mr. McCoy, Mr. Clark, and other management officials have created a continuing hostile work environment that undermined her credibility with subordinates, caused anxiety and insomnia, and stunted her professional advancement.

39.     As of the filing of this action, Ms. Raynor remains employed at NWQL continuing to experience retaliation and reputational damage.

## Count No. 1
## Violations of 29 U.S.C. §2000e seq.
## (National Origin and sex Discrimination)

40.     The allegations in paragraphs 1-39 are realleged as if set forth fully herein.

41.     Defendant, an Agency of the Federal Government, Defendant, an Agency of the Federal Government, is subject to oblige with this federal statute.

42.     Defendant, through its officials, subjected Plaintiff to adverse employment actions, including unwarranted discipline, downgraded evaluations, and exclusion from meetings, because she is a woman of Georgian national origin.

43.     Defendant knew of Plaintiff's National Origin and Sex.

44.     Similarly situated employees who were American-born males were not subjected to these adverse actions.

45.     As a direct and proximate result of Defendant's violations Plaintiff, Ms. Nino Raynor has been damaged. Such damages include but are not  limited to loss of pay; loss of benefits; past and future medical costs and expenses; payment of  attorneys' fees and legal costs;

loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress.   Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

46.     Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794a, Plaintiff prays for relief as set forth below.

### Count No. 2
### Violations of 29 U.S.C. §2000e seq.
### (National Origin and sex Discrimination)

47.     The allegations in paragraphs 1-39 are realleged as if set forth fully herein.

48.     Defendant, an Agency of the Federal Government, is subject to oblige with this federal statute.

49.     Defendant, through its officials, retaliated against Plaintiff immediately after she filed her initial EEO complaint by, in summary, engaging in a campaign of discipline, surveillance, and marginalization of her position.

50.     Defendant knew of Plaintiff's EEO activity, and the pattern of adverse action following her participation in protected activity establishes a clear and direct nexus between the activity and the retaliation.

51.     As a direct and proximate result of Defendant's violations Plaintiff, Ms. Nino Raynor has been damaged. Such damages include but are not  limited to loss of pay; loss of benefits; past and future medical costs and expenses; payment of  attorneys' fees and legal costs; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress.   Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

52.     Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794a, Plaintiff prays for relief as set forth below.

**Count No. 3**
**Retaliation in Violation of Title VII**
**42 U.S.C. §§ 2000e, et seq.**
**(Discrimination and Hostile Work Environment)**

53. The allegations in paragraphs 1-39 are realleged as if set forth fully herein.

54. Defendant, an Agency of the Federal Government, Defendant, an Agency of the Federal Government, is subject to oblige with this federal statute.

55. Defendant, through its officials, subjected Plaintiff to adverse employment actions, including unwarranted discipline, downgraded evaluations, and exclusion from meetings—as well as created and condoned a severe and pervasive work environment based on Plaintiff's national origin, sex, and participation in EEO activity.

56. The hostile environment included public humiliation, denial of necessary resources, disparate treatment and discipline, isolation, and overall embarrassment, all of which negatively altered Plaintiff's employment conditions.

57. Defendant knew of Plaintiff's National Origin and Sex as well as her involvement n protected activity.

58. Similarly situated employees who were American-born males were not subjected to these adverse actions.

59. As a direct and proximate result of Defendant's violations Plaintiff, Ms. Nino Raynor has been damaged. Such damages include but are not limited to loss of pay; loss of benefits; past and future medical costs and expenses; payment of attorneys' fees and legal costs; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

60. Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794a, Plaintiff prays for relief as set forth below.

COMPLAINT

PRAYER FOR RELIEF

WHEREFORE, Ms. Raynor respectfully requests that the Court enter judgment in his favor and  award him the following relief:

a)  An Order declaring that Defendant violated Mr. Raynor's rights under the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and restraining and enjoining Defendant from further violations;

b)  Award Plaintiff back pay for lost wages and benefits and prejudgment interest thereon.

c)  Compensatory damages in an amount to be determined at trial to compensate Ms. Raynor for the physical and emotional pain, embarrassment, humiliation, mental anguish, medical costs, future  medical costs, inconvenience, career loss, loss of professional reputation and career  opportunities, and loss of quality of life caused by Defendant's unlawful actions;

d)  Any and all accrued Thrift Savings Plan benefits;

e)  Award Plaintiff his full costs and reasonable attorney's fees; and

f)  Award such further relief as may be deemed just and appropriate.


Dated: October 22, 2025

Respectfully submitted,

/s/Daniel K.R. Maharaj

SOLOMON, MAHARAJ & KASIMATI, P.A.
5005 West Laurel Street, Ste 216
Tampa, FL 33607
daniel@smkfirm.com
813-565-1201
Bar ID: 252819

COMPLAINT